John DOE, Plaintiff,

v.

VILLAGE OF CRESTWOOD, ILLINOIS, et al., Defendants.

No. 90 C 4655.

United States District Court, N.D. Illinois, E.D.

April 2, 1991.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Plaintiff John Doe ("Doe") has filed a petition (the "Petition") for the award of attorneys' fees and related out-of-pocket expenses under 42 U.S.C. § 1988 ("Section 1988"), based on his having been the "prevailing party" in 42 U.S.C. § 1983 ("Section 1983") litigation against the Village of

Crestwood and its Mayor Chester Stranczek (collectively "Village" [1]). Village opposes the Petition in its entirety on conceptual grounds or, if it proves unsuccessful in that respect, contests some specifics of the Petition. For the reasons stated in this memorandum opinion and order, Doe is granted substantially all the relief that he seeks.

### Village's Section 1988 Liability

It is unnecessary to recount the history of the proceedings to and including the Court of Appeals decision reported at 917 F.2d 1476 (7th Cir.1990), which affirmed this Court's issuance of what was effectively a preliminary injunction (though labeled a temporary restraining order, "TRO") barring the conduct of a Catholic mass on Village property as an integral part of the annual Village-sponsored Italian Festival. What happened after that was that Village affirmatively represented to this Court that it would no longer engage in the challenged practice in the future, and that affirmative representation caused this Court to grant Village's motion to dismiss this action on mootness grounds—there was no longer a live case or controversy to support the consideration of permanent injunctive (or, for that matter, even declaratory) relief.

■ To resist its now being taxed with Doe's attorneys' fees, Village urges that he was not a "prevailing party" within the meaning of Section 1988. To that end it invokes last December's decision of our Court of Appeals in *Libby by Libby v. Illinois High School Association,* 921 F.2d 96 (7th Cir.1990). But as was equally true of Village's legal arguments that it tendered on the merits of this litigation, it prefers to ignore the fact that the very authority on which it seeks to rely carries the seeds of its own certain defeat.

*Libby* did indeed hold that the mooting of the underlying substantive controversy in

---

**1.** Because Mayor Stranczek was named only in his official and not his individual capacity, his inclusion as a defendant was essentially equiva- lent to naming Village twice—and thus was really surplusage.

the circumstances presented there, which foreclosed any merits adjudication, carried with it the denial of "prevailing party" status to the plaintiff who had previously obtained a TRO. But in doing so the Court of Appeals, 921 F.2d at 99 (citations omitted and emphasis added) expressly recognized the universal doctrine that an ultimate favorable determination on the merits was not at all the only basis for a litigant's being held a "prevailing party" in the statutory (and indeed the real-world) sense:

> A plaintiff who obtains provisional relief, such as a TRO, becomes a prevailing party only if that relief was a determination on the merits *or acted as a catalyst to obtain concessions from the appellee,* but not where the grant of provisional relief merely preserves the status quo.

Nor was that underscored alternative an expression of any startling new doctrine. In our own Circuit it has been established law for at least a decade in the related circumstance where a Section 1983 action is *settled* before the merits are reached (*Harrington v. DeVito,* 656 F.2d 264, 266-67 (7th Cir.1981) (citations omitted)):

> Essentially, to prevail in a settled case, the plaintiffs' lawsuit must be causally linked to the achievement of the relief obtained. Secondly, the defendant must not have acted wholly gratuitously, *i.e.,* the plaintiffs' claims, if pressed, cannot have been frivolous, unreasonable, or groundless.

Accord as to the relevant test, *Crosby v. Bowling,* 683 F.2d 1068, 1070 (7th Cir. 1982). And the same doctrine of the plaintiff as a statutory "prevailing party" because of having served as the catalyst for change has continued to be recognized and applied in such cases elsewhere as, for example, *Fields v. City of Tarpon Springs, Florida,* 721 F.2d 318, 321 (11th Cir.1983) (per curiam) (citations omitted):

> The Fees Act authorizes an award of attorney's fees to the "prevailing party" in a civil rights action such as this one. 42 U.S.C. § 1988 (1980). The law in this circuit recognizes that a party may pre-

vail without obtaining formal judicial relief. For example, a party may prevail when remedial action effectively moots the lawsuit before trial.

* * * * * *

To determine if a party has prevailed when there is no judicial relief this circuit has used the catalyst test. The catalyst test of prevailing party requires showing that the lawsuit is a causal link that prompted some remedial action.

There is a dramatic contrast between the situation in *Libby* and what happened here. There the TRO preserved the status quo briefly but was immediately overtaken by events that mooted the controversy—for the team on which plaintiff claimed to be entitled to play as a matter of constitutional right *lost* in the tournament's opening round. Nothing that defendant Association did or did not do in that case caused the matter to become moot—the triggering event was wholly *outside* the Association's control.

But here there is a sharp difference: Village was perfectly free to insist on asserting what it claimed were its own rights—to insist that it would continue to sponsor or permit (depending on one's view of the situation) the conduct of Roman Catholic masses on Village property and as part of a Village-sponsored festival under the circumstances at issue in the litigation. Village did not do so. Instead it announced that it had no plans to do so in the future—a decision and announcement that were totally *within* its control—and *that* was the basis on which this Court found it necessary to eschew a decision on the merits, because Village itself (and not any outside events) had rendered the controversy moot.

To permit a party thus to frustrate both the letter and the spirit of Section 1988 would exalt form over substance. It is hardly surprising that like circumstances have produced court decisions granting Section 1988 relief and the awarding of fees despite such mootness. Thus *Martin*

*v. Heckler,* 773 F.2d 1145, 1149 (11th Cir. 1985) (en banc), announced (citations [including the earlier *Fields* case] omitted):

> "For example, a party may be considered to be 'prevailing' if the litigation successfully terminates by a consent decree, an out-of-court settlement, *a voluntary cessation of the unlawful practice by the defendant, or other mooting of the case where the plaintiff has vindicated his right."* *This is true even where the remedial action moots the lawsuit before trial* and the plaintiff voluntarily dismisses the suit.

It should also be observed that this situation does not fairly fit the "status quo" category occupied by *Libby,* simply because Doe obtained only interim relief. In this situation the scheduled mass was an integral part of Village's Festival, due to begin on the very next day. In that sense timing was everything, a factor that this Court took importantly into account in evaluating the factors of irreparable harm and balancing of harms to determine whether or not the TRO should be issued—it was in light of the realization that temporary relief would in the meaningful sense be equivalent to ultimate relief on the merits (as to the *currently* scheduled mass, that is) that this Court found in the TRO:

> This Court finds that Doe's likelihood of success on the merits in this case is very high. While under *Roland Machinery* [*Co. v. Dresser Industries, Inc.,* 749 F.2d 380 (7th Cir.1984)] plaintiff must show a "reasonable likelihood" of success on the merits, here plaintiff's showing is much more substantial.

Importantly, wholly unlike the *Libby* situation, the Village obtained immediate appellate review of that decision—a decision that in realistic terms really altered rather than preserving the status quo, by forcing Village's cancellation of the scheduled mass in conjunction with the Italian Festival. Had the Court of Appeals majority viewed the issue differently (as was vigorously urged by the dissent), it could have reversed the granting of interim relief. It did not.

So Doe prevailed in obtaining the immediate success that he sought: cancellation of the currently scheduled mass. In that circumstance it is fair to read the definition in *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (footnotes omitted) as squarely encompassing Doe:

> A plaintiff must be a "prevailing party" to recover an attorney's fee under § 1988. The standard for making this threshold determination has been framed in various ways. A typical formulation is that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Nadeau v. Helgemoe,* 581 F.2d 275, 278–279 (CA1 1978). This is a generous formulation that brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is "reasonable."

Moreover, as already stated it was Village's own decision to abandon the challenged practice—an abandonment that was unquestionably triggered by Doe's lawsuit—that mooted the issue and thus precluded the prospect of an adjudication on the merits that would have been reached but for Village's action.[2]

### Items in Dispute

■ As to the attorneys' fees claimed by Doe, Village objects to three hours of the time spent by one of Doe's counsel—an objection that has itself been mooted by Doe's decision to withdraw that part of the request rather than fighting over the challenged item. As for the rest of the fees, Village disputes neither the hourly rates

---

**2.** Indeed, the final paragraph of the opinion on appeal expressly contemplated such a merits adjudication because "Doe wants an injunction against religious services at future festivals in Crestwood" (917 F.2d at 1479).

nor the time spent (and presumptively agrees that the product obtained by multiplying the time spent by the hourly rates represents a reasonable fee). Village does urge, on the strength of *Souza v. Southworth,* 564 F.2d 609 (1st Cir.1977), that fees-on-fees (that is, work performed on the fee petition itself) should be allowed only at a lower hourly rate. But that is a discredited notion that has not found favor in most courts, including those in this Circuit (see the thoughtful discussion in *Bond v. Stanton,* 630 F.2d 1231, 1235–36 (7th Cir.1980)).

This Court therefore approves the reduced request for $12,088 in fees, and it is also prepared to approve the supplemental request of $1,627.50 referred to in Doe's reply memorandum unless Village interposes an objection other than one based on *Souza* (because the supplemental amount was first referred to in Doe's reply memorandum, Village has not yet had the opportunity to respond). Unless on or before April 12, 1991 Village files an objection to the supplemental award in this Court's chambers, an order will promptly be entered that Village pay the total fees of $13,715.50 on or before April 22, 1991.

■ Village also objects to some of the expense items included in Doe's Petition. In that respect life has been somewhat complicated, since the parties began briefing the issues, by the issuance of the Supreme Court's opinion in *West Virginia University Hospitals, Inc. v. Casey,* —— U.S. ——, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991). Under a narrow reading of the majority opinion there, anything that did not qualify as statutory "costs" under 28 U.S.C. § 1920 also might not qualify for an award under Section 1988 (although the only issue directly before the Court in that case was the allowability of expert witness fees in excess of the rate prescribed for all witnesses in 28 U.S.C. § 1821(b)). However, *West Virginia University Hospitals,* at —— n. 3, 111 S.Ct. at 1141 n. 3 suggests (citing as an example *Northcross v. Board of Education of Memphis City Schools,* 611 F.2d 624, 639 (6th Cir.1979)) that reasonable out-of-pocket expenses incurred by the attorney and customarily billed directly to the client are "thought subsumed within the phrase 'attorney's fee'" rather than statutory costs—see Justice Stevens' dissenting opinion, —— U.S. at —— - ——, 111 S.Ct. at 1150–51, sought to be distinguished by the majority opinion's footnote; and cf. *Missouri v. Jenkins by Agyei,* 491 U.S. 274, 284 n. 7, 286, 109 S.Ct. 2463, 2469 n. 7, 2470, 105 L.Ed.2d 229 (1989).

Accordingly, unless and until the universal practice of including such out-of-pocket expenses in the allowable amount is changed by some controlling decision, this Court will continue to adhere to that practice. It finds that the grounds advanced by Village for challenging some of the expenses are unpersuasive, and it accordingly approves the originally requested sum of $803.58 for reimbursement of out-of-pocket expenses.

Again Doe's reply has set out some additional out-of-pocket items, this time aggregating $78 in photocopying expenses. As with the newly-asserted attorneys' fees, this Court will promptly approve those items as well unless Village identifies some objection in the response scheduled to be filed on or before April 12.