**NLFC, INC., Plaintiff,**

**v.**

**DEVCOM MID–AMERICA, INC., Defendant.**

**No. 93 C 609.**

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 11, 1996.

George W. Hamman, Hamman & Benn, Chicago, IL, for Plaintiff.

Bruce P. Golden, Bruce P. Golden & Associates, Chicago, IL, Jody B. Rosenbaum, Chicago, IL, for Defendant.

LINDBERG, District Judge.

Defendant's motion to strike {212–1} or disregard {212–2} plaintiff's objection to the magistrate judge's report and recommendation is denied. Defendant's motion for legal fees {153–1} and costs {153–2} is granted. The court finds that defendant is entitled to attorney's fees in the amount of $165,562.50 and costs in the amount of $3,784.45, for a total amount of $169,346.95.

### REPORT AND RECOMMENDATION

ASHMAN, United States Magistrate Judge.

This case is presently before the Court on Defendant's, Devcom Mid–America, Inc. ("Devcom"), motion for legal fees and costs. Plaintiff, NLFC, Inc. ("NFLC"), is a corporation which designs computer software and licenses its use. On January 29, 1993, NFLC filed its original Complaint alleging "on information and belief" that Devcom infringed on NFLC's copyright by obtaining copies of NLFC's software from certain licensees, modifying and enhancing the software and marketing the modified and enhanced software. On February 23, 1993, Judge George W. Lindberg ("Judge Lindberg") dismissed the original Complaint pursuant to FED. R.CIV.P. 11. NLFC filed a First Amended Complaint on March 3, 1993, with the same allegations but omitting all references to "information and belief." On January 4, 1994, Judge Lindberg adopted Magistrate Judge Ronald Guzman's Report and Recommendation granting Devcom summary judgment as to Count I and dismissing Counts II through IV for lack of diversity jurisdiction; thus disposing of the entire Complaint. This order was affirmed by the Seventh Circuit Court of Appeals on January 19, 1995, and on May 30, 1995, the U.S. Supreme Court denied NLFC's petition for writ of certiorari.

Devcom brings the instant motion as prevailing party under 17 U.S.C. § 505, FED. R.CIV.P. 54 and 28 U.S.C. § 1920. Extensive briefing by both parties preceded a full evidentiary hearing and oral argument conducted on June 20 and 29, 1995, after which the parties had additional time to file proposed findings of fact and conclusions of law. After a review of the record, this Court recommends that Devcom's motion for legal fees and costs be granted and that Devcom be awarded $165,562.50 in attorney fees and $3,784.45 in costs.

### Relevant Factual Background

The following undisputed facts are condensed from Judge Guzman's Report and Recommendation:

NLFC is a Delaware corporation with principal place of business in Dallas, Texas. NLFC is successor in interest of a Texas corporation known as Lab Force, Inc. ("Lab Force"). Robert Lewis has been president and a director of NLFC since June of 1990. Devcom is an Illinois corporation with principal place of business in Oak Brook, Illinois. Ronald G. Diener is president of Devcom.

In December 1987 and November 1989, respectively, NLFC entered into nonexclusive licensing agreements with two medical facilities, Cabrini Medical Center ("Cabrini") and Franciscan Shared Laboratory ("FSL"), for use of NLFC Software. The Cabrini Licensing Agreement permitted Cabrini to copy, modify, maintain, integrate and enhance the NLFC Software. (Cabrini Agreement, Sections 6.2.2, 6.2.4 and 6.2.7). The FSL Licensing Agreement specifically permitted FSL to use the services of a third party to maintain and support the NLFC Software. (FSL Agreement, Section 6).

Devcom was approached by FSL and then Cabrini to remove bugs and enhance their NLFC Software. Devcom used dedicated telephone lines, dumb terminals, and on-site efforts to debug and modify NLFC Software to allow it to run on Cabrini and FSL computers. In doing so, Devcom never received a copy of NLFC Software from either Cabrini or FSL; however, it did make a viewable printout of the software for the purpose of modifying the program for Cabrini and FSL as permitted under their respective Licensing Agreements.

On January 12, 1993, NLFC applied for a copyright with the U.S. Copyright Office to obtain copyright registration of its software entitled, "NLFC HYBRID Lab Information System Computer Program."

### Standard of Law

Devcom seeks fees and costs expended in defense of NLFC's infringement suit pursuant to three statutory provisions: Section 505 of the Copyright Act, Fed.R.Civ.P. 54 and Section 1920 of the Judiciary Code.

The parties agree that the instant dispute revolves around Section 505 of the Copyright Act ("§ 505") which directs:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. Two critical terms measure the scope and effect of this provision: 'prevailing party' and 'discretion.'

■ First, one seeking fees and costs under § 505 must be a 'prevailing party.' A 'prevailing party' is considered one who succeeds on a significant issue in the litigation after an adjudication on the merits. *See Milwaukee Concrete Studios v. Fjeld Mfg. Co.*, 782 F.Supp. 1314, 1318 (E.D.Wis.1991) (award of costs and fees under § 505 held inappropriate where alleged infringer prevailed only on a showing that plaintiff's proposed venue was improper). Significantly, § 505 makes no distinction between prevailing plaintiffs or defendants; instead allowing recovery "by or against any party."

■ Second, § 505 expressly provides that "the court in its discretion may allow the recovery." Recently, the U.S. Supreme Court addressed and resolved a conflict among the circuit courts regarding the proper approach to § 505 matters. *Fogerty v. Fantasy, Inc.*, —— U.S. ——, 114 S.Ct. 1023,

127 L.Ed.2d 455 (1994). In *Fogerty*, plaintiff copyright holder brought an infringement suit against defendant musician regarding a song composed by defendant but sold to plaintiff's predecessor in interest. The jury returned a verdict for defendant who then moved under § 505 for attorney's fees. The District Court denied that motion and the Ninth Circuit affirmed the denial applying the so-called "dual standard" approach in determining motions for fees and costs.[1] The Supreme Court, expressly rejecting the Ninth Circuit's "dual standard" approach favored by the Second, Seventh and D.C. Circuits, adopted the "evenhanded" approach favored by the Third, Fourth and Eleventh Circuits. As the name suggests, under the "evenhanded" approach, prevailing plaintiffs and prevailing defendants must be treated alike under § 505, and costs and fees are awarded only in the court's discretion. *Fogerty*, —— U.S. at ——, 114 S.Ct. at 1027.

The *Fogerty* court noted that the critical difference between § 505 and the "British Rule," under which the prevailing party always recovers costs and fees, is the discretion of the court provided in § 505. The discretionary nature of this statute necessarily prevents creation of a precise rule or formula for determining when attorney's fees should be awarded under § 505. *Fogerty*, —— U.S. at ——, 114 S.Ct. at 1033. Instead, *Fogerty* directs lower courts to exercise 'equitable discretion' in light of several nonexclusive factors including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty*, —— U.S. at —— n. 19, 114 S.Ct. at 1033 n. 19, quoting *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 156 (3d Cir.1986).[2] Post-*Fogerty* case-

---

**1.** Under the "dual standard" approach, prevailing plaintiffs are generally awarded attorney's fees as a matter of course; whereas prevailing defendants have a greater burden and must show that the original suit was frivolous or brought in bad faith. *Fogerty*, —— U.S. at ——, 114 S.Ct. at 1026; *see also Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) (involving a motion for fees and costs under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e–5(k)).

**2.** The Court notes that Fourth Circuit caselaw preceding *Fogerty* appears to de-emphasize frivolousness as a separate factor. In *Rosciszewski v. Arete Associates, Inc.*, the court cited *Lieb* for the proposition that bad faith should not be a prerequisite for a fee award under § 505. *Rosciszewski v. Arete Associates, Inc.*, 1 F.3d 225, 233 (4th Cir.1993). In *Rosciszewski*, the court set forth the following factors to be considered in light of *Lieb*: First, motivation of the parties; second, objective reasonableness of the legal and factual

law has taken into consideration other relevant factors such as the prevailing party's degree of success. *See Diamond Star Bldg. Corp. v. Sussex Co. Builders, Inc.,* 21 F.3d 59 (4th Cir.1994).

 Once liability is established, the prevailing party must prove that the costs and fees requested are reasonable. Caselaw interpreting FED.R.CIV.P. 54 and § 1920 provides guidance on what types of expenses are recoverable.[3] While the Supreme Court has held that § 1920 "defines the term 'costs' as it appears in Rule 54(d)" (*Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 441, 107 S.Ct. 2494, 2497, 96 L.Ed.2d 385 (1987)), the Seventh Circuit has found this does not forestall judicial interpretation of the meaning of phrases used in § 1920. *Northbrook Excess and Surplus Ins. Co. v. Procter & Gamble Co.,* 924 F.2d 633, 643 (7th Cir.1991). Caselaw also provides guidance as to the reasonableness of the amount. Several factors may be considered at this stage: relative complexity of the litigation, relative financial strength of the parties and bad faith. *See Lieb,* 788 F.2d at 156. At base, the sum recoverable may not exceed that charged the client but the award does not have to equal that amount. *Lieb,* 788 F.2d at 156.

 Therefore, under § 505 a prevailing party has a twofold burden of proof: First, it must establish that the circumstances entitles it to such costs and fees, and second, it must prove the reasonableness of those costs and fees in terms of necessity and amount.

### *Discussion*

**A. The Circumstances Warrant the Imposition Costs and Legal Fees Under § 505.**

The relevant factors presented for this Court's consideration are frivolousness, factual and legal unreasonableness, motivation, compensation and deterrence, and other factors such as degree of success. This Court finds that the circumstances of this suit show that Devcom is entitled to costs and fees associated with its defense.

#### 1. *Frivolousness*

 The facts of this case reveal that NLFC's copyright infringement suit has been marked by frivolousness since its inception. First, NLFC's actions prior to filing suit: It is undisputed that NLFC neither contacted Devcom nor the NLFC licensees in order to establish factual support for its allegations. According to NLFC, it was apprised of Devcom's alleged infringement by licensees which contacted NLFC after receiving letters from Devcom. NLFC contends that these licensees believed that Devcom was marketing NLFC Software to them and trying to convince them to abandon their agreements with NLFC. NLFC provides no evidence that it did anything to substantiate these licensees' beliefs, and there is no evidence that NLFC itself made an independent

---

positions advanced (under which frivolousness should be considered); third, the need in particular circumstances to advance consideration of compensation and deterrence; and, finally, any other relevant factor presented. *Rosciszewski,* 1 F.3d at 234. The Court considers this to be a distinction without a difference and will therefore consider all relevant factors, including frivolousness, as directed by *Fogerty.*

3. FED.R.CIV.P. 54 provides in pertinent part:
(d)(1) Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs
. . .
FED.R.CIV.P. 54(d)(1).
Section 1920 if the Judiciary Act ("§ 1920") directs:
A judge or clerk of any court of the United States may tax as costs the following:
(1) Fees of the clerk and marshall;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
A bill of costs shall be filed in the case and, upon allowance, included in the judge or decree.
28 U.S.C. § 1920.

decision regarding Devcom's actions. (Lewis Tr. 6/29/95, pp. 135–140). In fact, NLFC goes so far as to imply that its entire litigation strategy was driven by "the concerns and paranoia" of its client base (Lewis Tr. 6/29/95, p. 134), and the comments of the unnamed President of NLFC's User Organization who allegedly opined to Lewis that "I think you ought to sue them ... I think it potentially damages all of us." (Lewis Tr. 6/29/95, p. 132). NLFC's pre-complaint activity does not reflect a serious effort to gather factual support for the beliefs of third parties.

Second, the Complaint and Amended Complaint: As a result of inadequate investigation prior to filing suit, NLFC's original Complaint was supported by allegations based on "information and belief." The Complaint, clearly violative of FED.R.CIV.P. 11, was dismissed by Judge Lindberg. NLFC then filed an Amended Complaint which contained verbatim allegations without the "information and belief" language and there has been no evidence that NLFC in fact did anything additional to independently investigate these allegations between the time the original Complaint was dismissed and the time of the filing of the Amended Complaint. In other words, NLFC had no more facts supporting its contentions at the time of the filing of the Amended Complaint than it had before. In fact, the only conclusion we can draw is that, actually, the Amended Complaint was still based only upon information and belief although the words were removed.

Finally, NLFC's response to Devcom's motion for summary judgment: As the party opposing a motion for summary judgment supported by affidavits and deposition testimony, NLFC bore the burden of presenting evidence, proving its allegations—or at least creating a genuine issue of material fact. FED.R.CIV.P. 56(e). It is undisputed that NLFC provided no affidavit or deposition testimony to either support its allegations or undermine the credibility of Devcom's testimony. (Lewis Tr. 6/29/95, pp. 5–7, 147–48).

NLFC clings almost exclusively to its contention that the November 19, 1992 letter from Devcom to Walter Girod ("Girod letter") shows Devcom had copies of and was marketing NLFC Software. (Lewis Tr. 6/29/95, p. 135).[4] This reading of the Girod letter has been soundly rejected by every court that has considered it. First, Judge Lindberg adopted Judge Guzman's recommendation of summary judgment for Devcom which found "the letter fails to support any contention that Devcom ever had a copy of the NLFC Software or marketed modifications or enhancements of the software." (November 16, 1993 Report and Recommendation, p. 17). Second, Judge Manion of the Seventh Circuit affirmed summary judgment for Devcom and found that "nothing in this letter can be reasonably interpreted as marketing anything but Devcom's expertise in working with this software ... It simply would not be reasonable to read this letter as an attempt to market the software itself, modified or otherwise." *NLFC, Inc. v. Devcom Mid–America, Inc.*, 45 F.3d 231, 236 (7th Cir.1995).

While the mere fact that NLFC lost on summary judgment does not alone establish frivolity, the fact that it supplied not a single

---

**4.** This three-page letter, signed by Jon A. Kristofferson, Director of Software Development, and Ronald G. Diener, President of Devcom, explains Devcom's experience servicing prime hardware, the PRIMOS operating system, the UNIX operating system and the Lab Force system. The letter further notes that Devcom personnel has provided assistance to Lab Force customers including support, implementation and enhancement of the Lab Force system, and have been involved in a joint project to rewrite a major portion of the old microbiology system and write new bi-directional interfaces for two new microbiology instruments. According to Lewis, these statements indicated that Devcom had Lab Force/NLFC software and was bringing pieces of it into the new product. (Lewis Tr. 6/29/95, p. 135). The Girod letter's final paragraph reads as follows:

> All of our customers have expressed an interest in forming a Lab Users Group. Would you be interested in attending? We would be delighted to entertain your questions on what Devcom can do for your [sic] and your organization. If you are interested in the relationships we have developed with other Lab Force customers, references are available.

(Exh. A–1 to NLFC's Response to Motion for Fees and Costs). Lewis testified that he and his customers believed that the letter constituted "a preparatory document to attempted sale of a derivative work." (Lewis Tr. 6/29/95, p. 136, lns. 1–2).

piece of testimonial evidence at the dispositive summary judgment phase evidences frivolous litigation. In other words, faced with possible dismissal of this suit, the Court is certain that NLFC would have provided at least some testimony in support of its allegations—especially since it professes to have "individuals" available to testify at a trial who had "previously expressed their concern to NLFC over what they believed to be improper activities of Devcom." (*See* NLFC Closing Argument, p. 4).

■ These facts strongly suggest that NLFC had no evidence of any wrongdoing by Devcom but that it based its infringement suit on the unsupported "concerns and paranoia" of third parties and its own beliefs. (Lewis Tr. 6/29/95, p. 134, lns. 5–6). Considered in light of the entire litigation, NLFC's suit appears to have been frivolously brought and frivolously pursued to the detriment of Devcom. When a party has pursued a patently frivolous position, the failure of a district court to award attorney's fees and costs to the prevailing party will, except under the most unusual circumstances, constitute an abuse of discretion. *Diamond Star Bldg. Corp.*, 21 F.3d at 61.

### 2. *Factual and Legal Unreasonableness*

■ For many of the same reasons discussed above in Section A.1., this Court finds that NLFC's prosecution of this suit was objectively unreasonable and that Devcom is entitled to recover costs and fees associated with its defense. Even considering the facts in a light most favorable to NLFC, this action was unreasonable.

First, NLFC's central complaints were that Devcom copied NLFC Software and that Devcom was marketing modified NLFC Software. NLFC continues to assert the validity of its arguments which were rejected by the District Court and Seventh Circuit. Specifically, NLFC contends that since it did not authorize Devcom's copying of NLFC Software, any such copy, no matter how made or for what purpose, infringed its copyright.

This argument is not reasonable given the Licensing Agreements which permitted Ca-

brini and FSL to make copies of NLFC Software for use in their business operations and which permitted them to use a third party (*i.e.*, Devcom) to maintain or enhance said software. As found by the District Court and Seventh Circuit, the undisputed facts show that the License Agreements certainly permit at least some type of copying. To date, NLFC has provided no evidence that Devcom's work for Cabrini and FSL, including the printing out of source codes, violated these licenses. NLFC argues that it needed to show only that Devcom copied the software to prove infringement. However, the argument fails to recognize the Licensing Agreements NLFC executed with Cabrini and FSL.

NLFC's position regarding Devcom's alleged marketing of modified NLFC Software is equally unreasonable. The sole basis for NLFC's allegations rests on the Girod letter and certain unnamed third parties' interpretations of that letter. As discussed previously, every court that has considered the Girod letter has found that it cannot reasonably be considered evidence that Devcom was marketing NLFC Software. NLFC's failure to provide affidavit or deposition testimony from those who interpreted the letter differently further undermines the reasonableness of NLFC's allegations and arguments.

NLFC's allegations and arguments were not reasonable and Devcom is entitled to costs and legal fees under § 505.

### 3. *Motivation*

■ Another factor deemed important in determining liability for fees and costs under § 505 is motivation of the parties. Devcom contends that NLFC's bad faith radiates throughout the litigation. Not surprisingly, NLFC disputes Devcom's interpretation of NLFC's actions. Specifically, NLFC asserts that it was merely protecting its interests and did not make threats toward Devcom.

The Court finds one fact apparent. NLFC never initiated any discovery whatsoever, although it had only a third person's "belief" and its own "information and belief" to rely upon to substantiate its case. It never even tried to gather any evidence to support its case. The Court can only conclude that it was not motivated by a good faith intent to

prevail, but rather, a bad faith attempt to harm Devcom by forcing Devcom into extremely costly litigation.

The Court finds that NLFC's course of conduct exhibits bad faith motivation to harass Devcom rather than a motivation to protect its property interests.

#### 4. *Other Factors*

■ Devcom argues that two other factors are relevant to the issue of liability: the relative size difference between NLFC and Devcom and the degree of Devcom's success. In response, NLFC makes no real argument except to question Devcom's balance sheet.

At the hearings held June 20 and June 29, 1995, Devcom balance sheets and an NLFC balance sheet were introduced and Diener testified as to the fiscal health of Devcom. NLFC objected that the Devcom balance sheet does not tell the whole story. However, the balance sheets provided show NLFC's equity, as of December 1992, was $1,558,000.00, give or take $30,000.00 (Lewis Tr. 6/29/95, p. 31, lns. 9–12), while Devcom's total equity, as of December 1992, was $141,-159.73 and as of May 1995 it was $40,987.05 (Petitioner's Exhs. 28 and 13). These documents reveal a great disparity in relative size between NLFC and Devcom.

Further, this Court finds that Devcom was completely successful in its defense of this suit. Devcom was granted summary judgment on all counts of NLFC's Complaint, which was upheld at the Seventh Circuit. In addition, NLFC's *writ of certiorari* was denied by the Supreme Court. This can be categorized as nothing short of a complete victory.

#### B. Devcom Is Entitled To Reasonable Attorneys' Fees and Costs

■ Having found NLFC liable under § 505 for prevailing party Devcom's costs and legal fees, we must now consider whether the amounts claimed by Devcom were necessary and reasonable. Devcom, as the applicant, bears the burden of providing suf-

ficient evidence that the rates charged by Golden & Rosenbaum were in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. *See Blum v. Stenson*, 465 U.S. 886, 895–96, 104 S.Ct. 1541, 1544–47, 79 L.Ed.2d 891 (1984). In addition, Devcom bears the burden of establishing the number of hours reasonably expended on the case. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). While failure to present sufficient records can result in reduction of hours requested, the critical determination is whether the documentation, when taken in context, sufficiently identifies what work was done. *Gekas v. Attorney Registration & Disciplinary Comm'n*, 793 F.2d 846, 853 (7th Cir.1986).

#### 1. *Attorneys' Fees*

Devcom seeks $165,562.50 for fees charged by Golden and his associate Jody Rosenbaum ("Rosenbaum") for legal services provided in this litigation from February 1993 through the fee petition hearings on June 20 and June 29, 1995. NLFC makes procedural and substantive challenges to the shifting of these fees.

■ Procedurally, NLFC contends that the February 4, 1993 letter from Golden to Diener (Petitioner's Exh. 1) constituted a contingent fee agreement which, under Local Rule 39(a), (d)–(f), was required to have been filed with the Court. Undisputedly this fee agreement was never filed with the Court pursuant to Local Rule 39, and NLFC suggests that this precludes Devcom's fee petition. The Court does not agree. As a preliminary matter, a clear reading of the entire letter shows it to be an agreement for an alternate method of billing rather than a contingent fee agreement. While a contingent fee agreement sets the amount of fees based on the recovery, the agreement at issue always requires payment for 100% of the hours at some future time.[5] The terms of this agreement clearly do not calculate

---

5. While Golden agreed to bill only for 50% of the actual hours spent, the agreement expressly states: "At some date in the future we do expect to be paid in full for 100% of the remainder of our time." and "We expect to be paid in full for 100% of our time at some time in the future, although not at the time of the rendering of cash invoice." (Petitioner's Exh. 1).

Golden's fee as a percentage of any recovery or conditioned or contingent on recovery; rather it sets forth a modified billing and payment schedule. For these reasons, this Court finds that the fee agreement was not required to have been filed with the Court under Local Rule 39.[6]

▉ Substantively, NLFC objects to Golden's documentation of hours and to charges associated with certain services. NLFC argues that it is impossible to determine the reasonableness of Golden's fees from the invoices because no contemporaneous time sheets were provided. The Court finds that Petitioner's Exhibits 2 and 3 sufficiently document by date and type of service the hours charged by Golden. The Seventh Circuit generally requires contemporaneous fee records. *See Lightfoot v. Walker,* 826 F.2d 516, 523 n. 7 (7th Cir.1987). However, in *Lightfoot,* the court allowed fees in the absence of contemporaneous time sheets where reconstruction of the attorneys' hours was appropriate under the circumstances. In this case, given the detailed particularity of the monthly invoices sent by Golden to Devcom, no such reconstruction is required and it is clear that contemporaneous time sheets would not provide any more insight into the reasonableness of the fees. In fact, the Court finds that these invoices constitute contemporaneous time records and are sufficient. (Golden Tr. 6/29/95, pp. 25–31). Specifically, the invoices document the course of litigation and what services Devcom's attorneys performed. These detailed invoices permit the Court to determine the scope and reasonableness of these services and were prepared as the contemporaneous time sheets.

▉ Further, the Court finds that Devcom established that the fees, $250.00 per hour for Golden and $150.00 per hour for Rosenbaum, were within the market rate for such legal services. Robert Schneider ("Schneider") testified as an expert in intellectual property law. Schneider testified that Golden "has a reputation [in the community] of being a very good lawyer" (6/20/95 Hearing, p. 85) and that from his review of the litigation $162,000 was "a very reasonable sum to charge" and that a "reasonable range" for similar services would be "$260,-000, or $270,000 or $280,000." (6/20/95 Hearing, p. 92). In fact the attorneys' fees charged to the Defendants for the defense of this case were at least $239,000.00. (*See* Golden Tr. 6/29/95, p. 80, lns. 3–8). None of this testimony was refuted by NLFC. For these reasons, NLFC's general objections to Devcom's fee petition are overruled.

NLFC also makes specific challenges to the taxation of fees for services related to certain unsuccessful motions for sanctions filed by Devcom and for "representing a *pro se* client in Dallas." (6/20/95 Hearing, p. 96). The Court finds neither challenge is supported by the evidence or the law.

▉ First, as for the unsuccessful motions for sanctions, NLFC provides no caselaw to support its suggestion that fees associated with those motions may not be shifted to NLFC under § 505. The Court is mindful that the appropriate standard for attorneys' fees is "necessary and reasonable" *not* "necessary and successful." As the prevailing party under § 505, Devcom is entitled to reasonable attorneys' fees for the litigation, not simply for successful motions. The issue is reasonableness, and this Court finds that the fees associated with the unsuccessful motions were reasonable under the circumstances.

Second, "the *pro se* client in Dallas" referred to by Peter Vogel ("Vogel"), attorney for NLFC at the hearing on the motion for costs and fees, has been identified as Mike Mihalik who was subpoenaed by NLFC for a deposition in June 1993. NLFC intimates that certain services were performed by Golden on behalf of Mihalik regarding the subpoena and subsequent contempt proceedings in Texas. However, a close inspection of Golden's invoices and this case file reveals that charges listed by Golden pertained only to his representation of Devcom. NLFC provides no evidence that any of the invoiced

---

6. Even were this such a contingent agreement, Local Rule 39 is a rule guiding attorney ethics and NLFC provides no legal support for its position that failure to file under Local Rule 39 results in disallowance of fees.

legal services were performed for anyone other than Devcom, Golden's client. The Court finds that these charges were reasonable and necessary for Golden's representation of Devcom.

The Court finds that the evidence supports the conclusion that the legal services charged to Devcom were necessary and reasonable and sufficiently documented. Therefore, the Court awards $165,562.50 as attorneys' fees.

### 2. Costs

 It is well settled that courts enjoy broad discretion when determining whether expenses claimed by a prevailing party are taxable as costs. *Weihaupt v. American Medical Ass'n,* 874 F.2d 419, 430 (7th Cir.1989). However, this discretion is not without some guidelines, and, in order for a district court to award costs, the court must determine that the expenses are allowable and that they are reasonable and necessary to the litigation. *Weihaupt,* 874 F.2d at 430; *Dickinson v. Indiana State Election Bd.,* 817 F.Supp. 737, 751 (S.D.Ind.1992).

Devcom seeks a total of $12,976.80 as costs of the litigation from the District Court to the Seventh Circuit to the U.S. Supreme Court. Of those costs, $8,385.14 was directly borne by Devcom and $4,431.96 was expended by Bruce Golden ("Golden") as Devcom's attorney on its behalf. NLFC contends that these costs are not taxable on procedural and substantive grounds.

 Procedurally, NLFC asserts that Devcom has failed to comply with the appropriate rules. Specifically, NLFC claims that Devcom did not file the appropriate Bill of Costs needed to recover costs under FED. R.CIV.P. 54 within the required 30 days after judgment as set forth in Local Rule 45(a). Further, NLFC suggests that the affidavits supplied in support of the claimed costs do not comply with 28 U.S.C. § 1924, thus rendering Devcom's claims under § 1920 insufficient. NLFC's procedural arguments have no merit. This petition for costs and fees is brought under § 505. Where cost-shifting is expressly authorized by statute, courts have consistently held that the traditional limitations of Rule 54, and corresponding Local Rule 45, § 1920, and § 1924 do not apply.

*Dowdell v. City of Apopka, Florida,* 698 F.2d 1181, 1188 (11th Cir.1983), citing *Wheeler v. Durham City Bd. of Ed.,* 585 F.2d 618, 623 (4th Cir.1978). Consequently, NLFC's challenge is denied.

 Substantively, NLFC makes specific challenges to certain items claimed as costs. Devcom contends that the word "full" in § 505 must be read to expand the court's authority to allow for the award of costs beyond those taxable costs normally awarded a prevailing party under § 1920. The Court disagrees with Devcom's interpretation. *See Steven's Linen Associates, Inc. v. Mastercraft Corp.,* 1981 WL 1426 (S.D.N.Y. 2/17/81). Caselaw interpreting 17 U.S.C. § 116 (1970) (repealed), the precursor of § 505, has never accorded courts more discretion because of the word "full." In fact courts have always had authority under FED.R.CIV.P. 54(d) to tax costs not specifically enumerated in § 1920. However, the Supreme Court has consistently admonished that such discretion should be "sparingly exercised with reference to expenses not specifically authorized by statute." *Farmer v. Arabian American Oil Co.,* 379 U.S. 227, 235, 85 S.Ct. 411, 419, 13 L.Ed.2d 248 (1964). The Court must therefore address each of the enumerated costs claimed by Devcom to determine if costs not specifically covered by § 1920 are reasonable and necessary in this case.

### a. Photocopies

Devcom claims $6,312.53 in photocopy expenses of which $3,822.53 was incurred by Devcom for "third party xeroxing of documents requested by NLFC in discovery and Bates stamping of the same," $900.00 was also incurred by Devcom for "in-house xeroxing of documents," and $1,590.00 was borne by Golden for "copies of filings in Court." NLFC asserts that these charges do not provide sufficient documentation in that they fail to show what was copied or that said copies were necessary for use in this case.

 Courts have long permitted taxation as costs those sums expended for exemplification and copies of papers necessarily obtained for use in the case so long as the per copy charge is reasonable. *Voight v.*

*Subaru–Isuzu Automotive, Inc.*, 141 F.R.D. 99, 103 (N.D.Ind.1992). Included in the category of costs "reasonably necessary for use in the case" are copies attributable to discovery and the court's copies of pleadings, motions and memoranda; however, extra copies for the convenience of the attorneys are considered not necessary and are not taxed as costs. *Voight*, 141 F.R.D. at 103. *Independence Tube Corp. v. Copperweld Corp.*, 543 F.Supp. 706, 722 (N.D.Ill.1982) (extra copies of filed papers and correspondence, and copies of cases not recoverable). The party seeking such costs must provide the court with a breakdown of the copying charges (*Levka v. City of Chicago*, 107 F.R.D. 230, 231 (N.D.Ill.1985)), but this breakdown need not be so detailed as to render it economically impossible to recover the costs. *Northbrook Excess*, 924 F.2d at 643. Generally, however, when the Court is unable to determine whether the copies in question were reasonably necessary for use in the case, the claim for such costs should be denied. *Arachnid, Inc. v. Valley Recreation Products, Inc.*, 143 F.R.D. 192, 194 (N.D.Ill.1992); *Voight*, 141 F.R.D. at 102.

In addition, courts have denied claims for costs where the per page cost and number of copies is inadequately identified. *See Commercial Credit Equipment Corp. v. Stamps*, 920 F.2d 1361, 1367 (7th Cir.1990) (allowing photocopy costs where an "affidavit identifies the documents, justifies the use and provides the cost and the amount of copies."). Thus, caselaw is clear that whether copies are recoverable as costs depends on the use of the copies. *Arachnid*, 143 F.R.D. at 192. The phrase 'for use in the case' has been interpreted by the Seventh Circuit to refer to materials actually prepared for use in presenting evidence to the court. *E.E.O.C. v. Kenosha Unified School Dist. No. 1*, 620 F.2d 1220, 1227–28 (7th Cir.1980).

 Considering the photocopy expenses claimed in this case in light of the above caselaw, it is clear that at least a portion of these costs have not been adequately supported. First, Devcom's claim for $3,822.53 for third party xeroxing and

preparation of discovery material: Giving Devcom the most liberal consideration, we find it entitled to $2,630.20 for the cost of preparing and copying one set of discovery material since Devcom fails to address why three copies were necessary.[7] Next, Devcom's claim for $900.00 of in-house xeroxing of 15,000 copies at $.06: Devcom fails to identify what documents were copied or that such documents were used in the case, therefore, these costs will be denied.

 Finally, Golden's $1,590.00 claim for copying of court filings: This charge initially concerns the Court because, from the information provided (Petitioner's Exhs. 2, 3 and 5), the reproduction charges actually total $1,379.20. In addition, there is insufficient support for any of Golden's photocopy expenses. There is no indication how many copies of court filings were made or at what price per copy, nor does he indicate if any of the $159.70 reimbursed by NLFC under the Seventh Circuit's Bill of Costs pertained to photocopy costs. The Seventh Circuit has held that in-house copying may not exceed charges by an outside print shop, and since the evidence does not allow the court to make such a determination in this case, the charge must be disallowed. *See Martin v. U.S.*, 931 F.2d 453, 455 (7th Cir.1991) (appeals court remanded to the district court for a determination of whether the in-house copy costs exceeded those of an outside print shop).

Therefore, Devcom will be allowed $2,630.20 as reasonable and necessary photocopy expenses.

### b. Deposition Costs and Transcripts

Devcom also seeks as costs expenses related to holding depositions and obtaining transcripts. Of those, NLFC objects to the $260.00 charge for "holding depositions of James White and Arthur Solloday (no copies ordered)" because Devcom has not shown the depositions were necessary for the case.

 Like photocopy costs, deposition charges are generally taxable as long as the deposition in question was necessarily ob-

---

7. The Court also rejects Devcom's claim for $15.19 for copy costs at Kinkos since no invoice was filed and no number of copies or price per copy was evidenced.

tained for use in the case. *Wolf v. Planned Property Management,* 735 F.Supp. 882 (N.D.Ill.1990). The Seventh Circuit has held that the introduction of a deposition at trial is not a prerequisite, and that the determination of necessity must be made in light of the facts known at the time of the deposition. *Hudson v. Nabisco Brands, Inc.,* 758 F.2d 1237, 1243 (7th Cir.1985). While costs related to depositions may be assessed, depositions may not be taken merely for the convenience of the attorney or purely investigative in nature. *Hudson,* 758 F.2d at 1243.

■ Aside from identifying White and Solloday as "employees of NLFC," Devcom provides no explanation why their depositions were taken. In addition, none of the contents of either deposition was referenced in any material provided to this Court. Presented with this scant evidence, the Court has no way of determining whether these depositions were related to an issue present at the time they were taken. For this reason, the cost of White's and Solloday's depositions is denied.

As for the remaining costs, the Court is satisfied that the expenses related to the remaining depositions were reasonable and necessary and will award costs totalling $685.75.

### c. Diener and Devcom Expenses

Among the claimed costs are $3,578.88 for various expenses related to Diener's "time" and that spent by Devcom employees plus mileage and parking costs incurred by Diener. NLFC asserts that Devcom may not recover the costs for Diener's time because as a party he is not entitled to such fees. The undisputed facts show that Diener has been the president of Devcom since its inception and throughout this litigation. Diener has been the acknowledged corporate representative of Devcom throughout this litigation.

■ Corporate representatives are generally considered parties whose expenses cannot be recovered. *E.E.O.C. v. Sears, Roebuck & Co.,* 114 F.R.D. 615, 624 (N.D.Ill. 1987); *Simmons v. McLean Trucking Co.,* 100 F.R.D. 61, 63 (N.D.Ga.1983); and *Mastrapas v. New York Life Insurance Co.,* 93 F.R.D. 401, 406 (E.D.Mich.1982). However, when a designated representative testifies as a witness, courts have held that he or she is entitled to witness fees under 28 U.S.C. § 1821. *See Simmons,* 100 F.R.D. at 63. It is undisputed that Diener testified only one day and he is therefore entitled to $40.00 as allowed under § 1821. The remaining costs for parking and mileage have not been adequately evidenced and they must be denied.

■ As for the $2,060.18 cost for Diener's time and that of Devcom employees related to the production of discovery documents, Devcom provides no statutory or caselaw support (nor even any evidence or argument) to support the taxation of this cost. Devcom is the defendant in this suit and as such may not recover for its own internal time associated with preparation or defense.

### d. Expert Witness Fees

■ Devcom seeks $825.00 for work and testimony of Robert Schneider ("Schneider"). Schneider was provided by Devcom as an expert witness to support its claim for costs and fees. The law in the Seventh Circuit is clear that, for experts not appointed by the Court, the prevailing party may only recover the statutory amount prescribed in § 1821 and not any additional expert fees unless permitted by specific provision of a fee shifting statute. *Bankston v. State of Ill.,* 60 F.3d 1249, 1257 (7th Cir. 1995); *State of Illinois v. Sangamo Construction Co.,* 657 F.2d 855, 865 (7th Cir. 1981); *Lock v. Jenkins,* 634 F.Supp. 615, 619 (N.D.Ind.1986); *Independence Tube,* 543 F.Supp. at 721. The "correct standard for taxing expert fees is not the amount the expert charged the party nor is the time spent by an expert consulting with attorneys or preparing to testify a taxable cost." *Lock,* 634 F.Supp. at 619; *Independence Tube,* 543 F.Supp. at 721. Pursuant to § 1821 and caselaw, Devcom is entitled to recover $40.00 for Schneider's one day of testimony. The remaining expenses relating to Schneider are prohibited.

### e. Printing Costs

■ Devcom seeks $770.00 as the full cost of printing its brief filed with the Su-

preme Court. United States Supreme Court Rule 43.3 addresses Supreme Court practice and expressly directs that "expenses of printing briefs ... are not taxable." *See Haroco, Inc. v. American Nat'l Bank & Trust of Chicago,* 38 F.3d 1429, 1440 (7th Cir.1994). Even had Devcom been the prevailing party at the Supreme Court, it would not have been entitled to such costs and this Court will not countenance what amounts to an attempted 'end run' around this rule. *Haroco,* 38 F.3d at 1440. These costs are therefore denied.

### f. Office Supplies and Miscellaneous Expenses

Devcom and Golden seek to have a myriad of general expenses taxed to NLFC including telephone expenses, messenger services, facsimile transmissions, binding charges, postage, ink stamps and cab fare. NLFC objects to these charges as being nontaxable and the Court agrees.

■ First, telephone charges: Devcom argues that it is entitled to both local and long distance telephone charges under § 505. There is no law to support this contention. In fact the case cited by Devcom, *Clark v. Marsh,* 609 F.Supp. 1028 (D.D.C.1985), expressly involved only long distance charges of $168.40 where the prevailing party lived on the East Coast and the attorney lived in California. *Clark,* 609 F.Supp. at 1035–36. Here, while NLFC's counsel is from Texas, thus certainly necessitating some long distance communication, Devcom fails to catalog its long distance charges. In fact at least one court has held that long distance charges are out-of-pocket expenses not taxable as costs. *Ezelle v. Bauer Corporation,* 154 F.R.D. 149, 155 (S.D.Miss.1994). The Court has no way of determining what portion of the nearly $300.00 in telephone expenses are properly taxable. Therefore, none of these expenses will be allowed.

■ Second, messenger services, facsimile transmissions, deliveries and postage: Devcom argues that these costs are ordinarily out-of-pocket attorney expenses which are recoverable under § 505 and relies on the holdings in *West Virginia University Hospitals, Inc. v. Casey,* 499 U.S. 83, 111 S.Ct.

1138, 113 L.Ed.2d 68 (1991); *Heiar v. Crawford County,* 746 F.2d 1190 (7th Cir.1984); *Doe v. Village of Crestwood,* Ill., 764 F.Supp. 1258 (N.D.Ill.1991); *Deary v. City of Gloucester,* 789 F.Supp. 61 (D.Mass.1992). In each of these cases, certain nonstatutory expenses, *i.e.,* out-of-pocket expenditures of the attorney beyond normal overhead, were awarded as part of the attorneys' fee pursuant to § 1988, even though they were listed separately from the hourly rate. *See Dickinson,* 817 F.Supp. at 752; *Doe,* 764 F.Supp. at 1262. In other words, such expenses are recoverable as attorneys' fees—not as costs, and when attorneys' fees have been awarded, the prevailing party is then only entitled to recover costs specifically enumerated under § 1920. *Allen v. Freeman,* 122 F.R.D. 589, 591 (S.D.Fla.1988).

Since this Court has previously granted a generous attorneys' fee award, these expenses, clearly not taxable under § 1920, are not allowable. However, even considering these expenses as part of the attorneys' fee award, this Court finds them not proper. Devcom fails to provide any evidence that these expenses were reasonable or necessary for this litigation or that certain expenses were beyond normal overhead. *See Wahl v. Carrier Manufacturing, Inc.,* 511 F.2d 209, 215–17 (7th Cir.1975); *Agola v. Hagner,* 678 F.Supp. 988, 996 (E.D.N.Y.1987) (disallowing messenger services, federal express deliveries and postage); *Hollenbeck v. Falstaff Brewing Corp.,* 605 F.Supp. 421, 439 (E.D.Mo.1984) (denying as costs federal express and local delivery service, office expenses and postage). Therefore, the Court denies Devcom's claims for messenger services, federal express deliveries, postage and facsimile transmissions.

■ Third, ink stamps, binding costs, court fees and cab fare. Once again Devcom argues that these expenses are the type of out-of-pocket expenses allowed as fees yet provides no caselaw for support. As for the ink stamps and binding charges, these costs can only be classified as office expenses which, as discussed above, should not be awarded in light of the large attorneys' fees granted. As for cab fare, the Court is first

puzzled by inconsistent pleadings wherein Devcom first seeks $15.00 (Devcom Proposed Findings of Fact, p. 31) and then claims $10.00 (Devcom Reply, p. 14, ¶¶ 6–7). In any event the charge appears on the April 1994 invoice, a month in which the only legal services performed were the preparation and filing of the appellate brief, so the Court can only assume that this is not the type of travel expense allowable as costs.

Finally, the court fees. Devcom fails to explain what fees it incurred as Defendant in this case. Absent such an explanation, this Court will not award these fees as costs.

### g. Transcript and Tapes

■ Devcom seeks to have charges for the fee hearing tapes and a copy of the transcript taxed as costs. The Court finds this cost permissible as a reasonable and necessary expense for prosecution of the fee petition. Therefore, the Court allows $388.50.

### h. Total Cost

For the above mentioned reasons the Court now awards the following $3,784.45 as costs for this action:

| | |
|---|---|
| Photocopying | $2,630.20 |
| Deposition costs | 685.75 |
| Diener witness fee | 40.00 |
| Schneider witness fee | 40.00 |
| Transcript and tapes | 388.50 |
| | |
| Total | $3,784.45. |

### Conclusion

For all of the above mentioned reasons, this Court finds that Devcom has established its entitlement to costs and fees under § 505 as prevailing party and further finds that Devcom has proven that attorney's fees in the amount of $165,562.50 and costs in the amount of $3,784.45 are reasonable and necessary. The Court therefore recommends an award of fees and costs in the amount of $169,346.95.